## EATON *v.* NEUMARK *et al.*

### (*Circuit Court, S. D. New York.* October 3, 1888.)

SHIPPING—CARRIAGE OF GOODS—DELIVERY—DUTY OF MASTER.

Bills of lading for a consignment of iron rails, of which 88 tons were to be delivered to respondents, and 180 tons to a third person. contained the clause, "vessels not accountable for number of pieces or weight." It appeared that the entire consignment actually weighed 20 tons less than the bills recited; that respondents received 28 tons less than their bill called for, and the other consignee 8 tons more; that the rails were discharged direct from the ship into cars of a railroad company authorized by the consignees to accept delivery; that respondents' agents assisted in selecting what was delivered, accepted it as what they were entitled to, and shipped it away by the cars. *Held,* that though the master may have been indifferent in making the separate delivery, yet, respondents' agents having undertaken to do his work, the burden was on respondents to show that the quantity accepted by the agents was less than should have been delivered to them, through some fault of the ship.

In Admiralty. On appeal from district court. 33 Fed. Rep. 891.

Libel by Charles F. Eaton to recover freight on a consignment of iron rails. The respondents, Julius Neumark and others, pleaded as an offset shortage in the quantity delivered. There was a decree in the district court in favor of the libelant, and respondents appeal.

*L. Edgar Aron* and *Geo. E. Sibley,* for appellants.

*James K. Hill* and *Wing & Shoudy,* for appellee.

WALLACE, J. As the master gave separate bills of lading for the two consignments of old iron which he undertook to transport, it became his duty to make delivery to each of the two consignees of their respective parts of the cargo, and to keep the two consignments separate or distinguishable, so far as necessary in this behalf. The circumstance that the whole cargo was received from one shipper did not affect his responsibility in this regard. The clause which was written in the bills of lading, "vessel not accountable for the number of pieces or weight," did not absolve him from making delivery of all the iron he received, but only qualified the effect of the recital in the bill of lading of the number of pieces, and the weight of the iron received, as an admission. It was equivalent to a statement by the master that he had not so verified the truth of the admission as to be willing to adopt it as correct. According to their bill of lading, the appellants, who were the consignees

of one of the shipments of iron, were entitled to receive 88⅔ tons. The consignees of the other shipment, Waulbaum & Co., according to their bill of lading, were entitled to receive 180½ tons. Thus the aggregate of both shipments, according to the recitals in the bills of lading, was 269¼ tons. When the iron was discharged it was weighed by an officer of customs, and both lots together were found to weigh 20 tons less than the weight called for by the two bills of lading. I agree with the district judge, that the evidence shows that the ship discharged in the cars of the railway company all the iron actually received at Danzig, and that the amount actually received was 20 tons in weight less than the bills of lading called for. But the appellants received 60½ tons, instead of 88⅔ tons, while Waulbaum & Co. received 8 tons more than their bill of lading called for. The question in the case is not whether the master delivered all the iron received by the ship, but whether he delivered to the appellants that part of it which belonged to them under their bill of lading. When the ship arrived at Philadelphia the consignees of both shipments directed the iron to be delivered at the wharf of the Reading Railway Company, where it had to be put on board the cars of that company. As the iron was discharged an employe of the railway company designated which cars were the ones for each of the consignees. Besides selecting the railway company to receive the iron from them, and requesting the officer of customs to see that they got what belonged to them, and giving necessary information to the latter of the quantity which their bill of lading called for, the appellants gave no attention to the matter. After the cars were loaded they were weighed, and dispatched to the respective consignees, under the supervision of the customs officer and the employe of the railway company. The master's duty ended when he delivered into the cars designated for the respective consignees the iron belonging to each. If any mistake was made by the employe of the railway company, or the customs officer, or either of them, in designating the cars or dispatching them to the proper consignees, the master was not responsible for it, and the appellants cannot complain. What was delivered to the railway company pursuant to the directions given the master by the employe of the railway company or the customs officer was delivered to the appellants, because they had made these persons their agents for the purpose. As their agents assisted in selecting what was delivered, accepted it as what they were entitled to by their bill of lading, and caused it to be sent away by the cars, it is incumbent upon the appellants to show satisfactorily that what was thus accepted was less than should have been delivered, and that their failure to receive all they should have received is attributable to some default on the part of the ship. The evidence fails to show this, and is as consistent with the theory that the ship delivered to the designated cars all the iron that belonged to the appellants, and that one of the cars in which the iron was sent away was misdirected, as with any other theory of the facts. Although eight tons more of iron were sent to Waulbaum & Co. than their bill of lading called for, there is nothing in the evidence to fix the master with the responsibility for the mistake. The master seems to have assumed that

he owed no duty to the consignees of the two shipments to make separate delivery, but that, having stipulated in the bills of lading not to be accountable for weight or number, all he was required to do was to put out all the old tramway rails he had on board, and let each consignee select his own; and I cannot doubt that his indifference in this regard imposed additional responsibility upon the agents for the appellants, and to some extent embarrassed them in discharging their duties. Nevertheless, if they saw fit to undertake to do what it was primarily the master's duty to do, no legal responsibility for any subsequent loss can be imputed to the master. As stated before, the only question is whether the iron belonging to the appellants was delivered into their cars. They must show that some part of it was not thus delivered; and this they have not done. The decree of the district court would be more satisfactory if costs had not been allowed to the libelant. In all other respects it is affirmed. Neither party is awarded costs in this court.